# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

DNV Investment Partnership, Dale Menard, )
S. Eugene Mathis, Jr., Kenneth A Grinspun, )
Addison Holdings LLC, and Context Direct II, LP, )
on behalf of themselves and )
all others similarly situated, )
     Plaintiffs, )    No. 15-cv-1255 (PAC) (HBP)
           )
vs. )    CLASS ACTION
           )    JURY DEMAND
           )
SGM Holdings, LLC, )
Syndicated Geo Management Corporation, )
Richard Featherly, )
Lawrence Field, and )
Premier Natural Resources, LLC, )
     Defendants. )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' (SECOND) MOTION TO DISMISS

This 30th day of April 2015.

BY:   /s/ A. James Andrews
     A. James Andrews BOPR# 15772
     1405 Magnolia Ave.
     Knoxville, TN 37917
     (865) 660-3993
     (865) 523-0995 – Facsimile
     andrewsesq@icx.net


     /s/ Richard L. Gaines
     Richard L. Gaines, BPR # 15462
     550 Main Street, Suite 950
     Knoxville, TN 37902
     (865) 546-4292
     (865) 546-4294 – Facsimile
     richardlgaines@gmail.com

# TABLE OF CONTENTS

Table of Authorities…………..…………………………………………………………iii

Introduction…………………………………………………………………………..…1

Statement of Facts…………………………………………………………………....…1

Standard of Review…………………………………………………………………….4

Response and Argument………………………………………………………………7

    I.    Plaintiffs Have Standing…………………………………………………....…7

        a.  Plaintiffs Have a Direct Claim……………………………....……..8

        b.  Plaintiffs' Claims Were Not Released by Met13 in The Global Settlement Agreement………………………………………………………..…10

            i.  Justice Sherwood's Order……………………………......10

            ii.  Judge Lipman's Order…………………..…………..........12

            iii.  Lisiak Lacked Power to Abrogate Plaintiffs' Claims……...........13

        c.  Plaintiffs Claims Are Not Barred by *Res Judicata*…………………14

    II.    Plaintiffs' RICO Action is Proper……………………………………………15

    III.    Plaintiffs State a Fraud Claim with Properly-Pled Particularity……….…….16

        a.  Plaintiffs' Response to Defendants' Claims Concerning Ambiguity of Defendants………………………………………………….………17

        b.  Plaintiffs Allege Motive That Would Allow an Inference of Intent……………………………………………………………..…18

    IV.    Plaintiffs' Claim of Civil Conspiracy Are Properly Pled………………...…18

        a.  The Underlying Torts……………………………………………….19

            i.  The Scheme………………………………………………20

V.      Plaintiffs Justifiably Relied on Defendants' Statements.............................20

VI.     RICO Claim……...................................................................................21

VII.    Jury Trial…...........................................................................................23

VIII.   Conclusion……...................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*4 K & D Corp. v. Concierge Auctions*, LLC, 2 F.Supp.3d 525 (S.D.N.Y. 2014)...............6

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995)........................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................5

*A. Terzi Productions, Inc. v. Theatrical Protective Union*,

    2 F.Supp.2d 485, 499 (S.D.N.Y. 1998)...................................................20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)....................................4

*Bold Electric, Inc. v. City of New York*, 53 F.3d 465 (2d Cir. 1995)........................4

*Bordell v. General Elec. Co.*, 922 F.2d 1057 (2d Cir. 1990).................................7

*Boyle v. United States*, 556 U.S. 938, 944 (2000)...........................................23

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653-53 (2008).....................22

*Butala v. Agashiwala*, 916 F.Supp. 314 (S.D.N.Y. 1996)....................................9

*Caputo v. Pfizer*, 267 F.3d 181 (2d Cir. 2001)...............................................5

*Carter v. Berger*, 777 F.2d 1173, 1176 (2d Cir. 1985).....................................22

*Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161 (2001)....................23

*CILP Associates v. Pricewaterhousecoopers LLP*, 735 F.3d 114 (S.D.N.Y. 2013)...........9

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013)...............................6

*Davidowtz v. Partridge*, 2010 WL 5186803 (S.D.N.Y. Dec. 7, 2010)......................7

*Farago Advertising, Inc. v. Hollinger Intern, Inc.*, 157 F.Supp.2d 252 (2d Cir. 2001).....11

*Federal Housing Finance Agency v. JP Morgan Chase & Co.*,

    902 F.Supp.2d 476 (S.D.N.Y. 2012).....................................................16

*Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,

    2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)........................................................7

*Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981)....................................19

*In re Merrill Lynch Lmtd. Ptnrshps. Litigation*, 7 F.Supp.2d 256 (S.D.N.Y. 1997)...........9

*Int'l Motor Sports Group, Inc. v. Gordon*,

    1999 WL 619633 (S.D.N.Y. Aug. 19, 1999)…......................................................7

*Lancaster v. Zufle*, 165 F.R.D. 38 (S.D.N.Y. 1996)........................................................13

*Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997).....21

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)....................................................6

*The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387 (S.D.N.Y. 1988)............................6

*Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239 (3d Cir. 2001)............................9

*McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).......................22

*Medtech Products, Inc. v. Ranir, LLC*, 596 F.Supp.2d 778 (S.D.N.Y. 2008)...................19

*Monahan v. N.Y. Dept. of Corrections*, 214 F.3d 275 (2d Cir. 2000)...............................14

*Nakahata v. New York Presbyterian Healthcare Sys, Inc.*,

    723 F.3d 192 (2d Cir. 2013)..................................................................................6

*Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 495 (S.D.N.Y. 2001).............21

*Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986)...............................21

*S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997).....................................................21

*Sedima, S.P.R.L. v. Imrix Co., Inc.*, 473 U.S. 479 (1985).................................................22

*Sepenuk v. Marshall*, 2000 WL 1808977 (S.D.N.Y. 2000)...............................................19

*Solutia Inc v. FMC Corp*, 385 F.Supp.2d 324 (S.D.N.Y. 2005)..........................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)....................................5

*United States v. Philip Morris USA*, Inc., 566 F.3d 1095, 1111 (D.C. Cir. 2009)...........23

*United States v. Vasquez*, 145 F.3d 74 (2d Cir. 1998)........................................7

*Warth v. Seldini*, 422 U.S. 490 (1975)........................................................8

*Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542 (2d Cir. 1985).................22

*William Penn Life Ins. Co. of New York v. Viscuso*,

     569 F.Supp.2d 355 (S.D.N.Y. 2008).....................................................13

*World Wrestling Federation Entertainment v. Bozeel*,

     142 F.Supp.2d 514, 532 (S.D.N.Y 2001)..............................................19

*Wynn v. AC Rochester*, 273 F.3d 153 (2d Cir. 2001).........................................6

## STATE CASES

*Alexander & Alexander of N.Y. v. Fritzen*,

     503 N.E.2d 102, 102 (N.Y. App. Div. 1986)..........................................19

*Continental Casualty Co. v. PricewaterhouseCoopers LLP*,

     15 N.Y.3d 264 (N.Y. Ct. App. 2010)..................................................8

*Kirch v. Liberty Media Corp.*, 499 F.3d 388, 402 (2d Cir. 2006).............................18

## STATUTES AND RULES

18 U.S.C. § 1962........................................................................21, 23

18 U.S.C. § 1961(3).....................................................................19, 18

U.S.C. § 1961(4)...........................................................................23

Fed. R. Civ. P. 8......................................................................7, 17, 19

Fed. R. Civ. P. 9.........................................................3, 5, 6, 7, 16, 17, 19

Fed. R. Civ. P. 12(b)(6).....................................................................4, 5

Delaware Revised Uniform Limited Partnership Act, § 15-405(c)...............................10

## Introduction

COME NOW Plaintiffs, DNV Investment Partnership ("DNV"), Dale Menard, S. Eugene Mathis, Jr., Kenneth A. Grinspun, Addison Holdings, LLC ("Addison"), and Context Direct II, LP ("Context") (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, and submit this memorandum of law in support of their Opposition to the Defendants' Motion to Dismiss and Motion to Strike the Jury Request. Plaintiffs respectfully request this Court to deny Defendants' Motions in their entirety and let this matter proceed to discovery.

## Statement of Facts

The record contains documents and affidavits establishing that:

1. Lawrence Field ("Field"), through his now-dissolved company, Regent Private Capital, LLC ("Regent"), acquired an interest in oil and gas options on an old, worn out Ohio oil field (the "Properties"), as described in the Amended Complaint. (Attachment A, *Financial Agreement*);

2. Field, through Regent, acquired the undisclosed interest in the Properties prior to when the Plaintiffs and Class Members wrote checks used to fund Metropolitan 13, LP ("Met13"), a limited partnership formed to exploit the Properties;

3. Field, purportedly through his family-owned company, Premier Natural Resources ("Premier"), claimed to have performed due diligence[1] on the Properties without disclosing his financial interest in the Properties;

---

[1] Field stated that Premier's engineers had performed a million dollars' worth of diligence on the Properties. However, there is nothing in the record that shows that Premier did any diligence whatsoever.

4. As part of the due diligence, Field and Richard Featherly ("Featherly") contracted with an independent company, the Bayswater Exploration and Production Company ("Bayswater"), to evaluate the Properties;

5. Bayswater produced a report ("Bayswater Report") containing both positive and highly-damaging information about the condition of and prospects for the Properties (Attachment B, the *Bayswater Report* with redacted portions highlighted);

6. The Defendants omitted the following negative information from the diligence report compiled by Bayswater:

   a. Issues relating to "casing leaks" on every wellbore in the deal;
   b. Quantification of abandonment costs for unproductive wells;
   c. The lack of geologic information, mapping, cash flow information, and identification of active versus inactive wells;
   d. A "'tremendous' lack of technical information, such that the upside cannot be de-risked through study/technical work";
   e. Data indicating that current cash flow from the assets did not justify significant asset value and that the "existing deal structure . . . doesn't fit the asset and opportunity";
   f. That further diligence would be required before Bayswater would be willing to participate in the deal.

7. The Defendants transmitted, through multiple telephone calls and at least one e-mail, only the positive information from the Bayswater Report to Class Members and the General Partner of Met13 (Attachment C, the *Bayswater Report Email* and Collective Attachment D, *Declarations of Plaintiffs and Class Members*);

8. Defendants' untruthful information caused the General Partner of Met13 to disseminate a misleading offering for the Met13 limited partnership to the Plaintiffs and Class Members (Attachment E, the *Confidential Disclosure Memorandum, hereinafter the "CDM"*);

9. Had the Plaintiffs and Class Members known of the undisclosed financial relationship between the Defendants or the substance of the negative information about the properties, they would never have written the checks that were used to fund Met13 (Attachment D).

For purposes of this lawsuit, Defendants' fraud ceased when the Plaintiffs and Class Members wrote their checks to fund the limited partnership. The Amended Complaint specifies events that took place after Met13 was funded and provides context and detail to respond to Defendants' inevitable assertion that the Amended Complaint fails to plead fraud with the necessary particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") and applicable case law.

The Defendants used much of their Memorandum of Law to attack a purported derivative action that they incorrectly assert is the basis for Plaintiffs' claims (perhaps wishing that Plaintiffs had instead alleged claims to remedy injuries suffered by Met13) as opposed to the direct claims for Plaintiffs' own injuries. Defendants also discuss and ultimately misconstrue documents and actions that were created *after* the Plaintiffs and Class Members wrote their checks that were used to fund the Defendants' unlawful enterprise.

These arguments by the Defendants are irrelevant. The substance of the lawsuit rests upon the Defendants' fraudulent relationship and fraudulent acts that preceded the funding of Met13; namely, the misrepresentations and concealments that induced the Class Members to part with their money *prior* to any management decision by Met13 or its general partner. Defendants want this Court to invoke later actions by an innocent party, Paul Lisiak ("Lisiak"), to immunize them from their tortious conduct.

The Defendants further contend that the Plaintiffs are acting in their capacity as limited partners to Met13, the entity funded with the Plaintiffs' and Class Members' money.[2] This is not the case. The Plaintiffs' lawsuit is a direct action seeking redress for the Defendants' fraudulent conduct occurring *before* the Plaintiffs wrote their checks. Defendants' lies and concealments were directed at the Plaintiffs and the Class Members when they were *potential investors* who had not yet parted with their money and had not yet invested in the limited partnership. The genesis of Defendants' fraudulent activities occurred before Plaintiffs assumed the status of limited partners within Met13.

Plaintiffs seek to represent only those individuals who initially funded Met13. The Met13 limited partnership evolved over time and would eventually include other classes of limited partners whose situation differs substantially from the Plaintiffs and Class Members at bar (Attachment D, Van Menard Declaration). Unless the Defendants can proffer specific evidence showing that the Met13 general partner knew of or participated in Defendants' lawful activities, the lawsuit at issue should stay narrowly focused on the time frame before Met13 was funded.

## Standard of Review

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court endorsed the requirement that the plaintiff plead enough facts "to state a claim for relief that is plausible on its face." 550 U.S. 544, 570 (2007). Factual allegations must be

---

[2] Plaintiffs note that the Defendants erroneously insist on referring to Metropolitan Equity Partners, LLC, the General Partner in Met13, as a "hedge fund." It is not, and to the Plaintiffs' knowledge has never been, a hedge fund.

enough to raise a right to relief above the speculative level, and complaints attacked on Rule 12(b)(6) grounds do not need detailed factual allegations. *Id.* at 545. Instead, in response to a Rule 12(b)(6) motion, a court should construe the complaint liberally and assume all facts as true. *Id.* at 556-57. Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007) (stating that a Rule 12(b)(6) analysis concerns whether *all* the facts alleged give rise to a strong inference of *scienter*, not whether any individual allegation does).

A pleading must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether a complaint states a plausible claim is context-specific and requires the court to draw on its judicial experience and common sense. *Id.* at 679. A bare recital of legal conclusions is insufficient and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The liberal pleading requirement promulgated in *Twombly* and *Iqbal* is modified by Rule 9(b) of the Federal Rule of Civil Procedure, which requires a plaintiff asserting fraud claims to meet a heightened pleading standard. FED. R. CIV. P. 9(b). Within the Second Circuit, Rule 9(b) is satisfied when a complaint specifies "the time, place, speaker, and content of the alleged misrepresentations . . . and explain[s] how the misrepresentations were fraudulent and 'plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Caputo v. Pfizer*, 267 F.3d 181, 191 (2d Cir. 2001)

(citing Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)); *see also Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

However, under Rule 9 (b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." FED. R. CIV. P. 9(b). Nonetheless, "plaintiff[s] must allege facts that give rise to a strong inference of fraudulent intent." *Nakahata v. New York Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). The inference "may be established either by (a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-291 (2d Cir. 2006). Moreover, "the particularity requirement is not a mechanical formula demanding exacting precision but must instead be applied in view of its express purposes and the facts of each case." *4 K & D Corp. v. Concierge Auctions*, LLC, 2 F.Supp.3d 525, 538 (S.D.N.Y. 2014); *see also The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 393 (S.D.N.Y.1988) ("The nature and extent of the detail required will vary with the circumstances of each case.").

New York Law requires a plaintiff pleading fraud to demonstrate"(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). As for fraudulent inducement, a plaintiff must establish "(1) a material misrepresentation or omission that induced the party to sign

the contract; (2) scienter; (3) reliance; and (4) injury." *Davidowtz v. Partridge*, 2010 WL 5186803 at *7 (S.D.N.Y. Dec. 7, 2010).

Nonetheless, Rule 9(b) does not displace Rule 8(a); instead, courts "in analyzing the sufficiency of a pleading under Rule 9(b), . . . must balance the rule with both Fed.R.Civ.P. 8(a), which requires only a 'short and plain statement' of the claims for relief, and Fed.R.Civ.P. 8(f), which provides that 'all pleadings shall be so construed as to do substantial justice.' *Int'l Motor Sports Group, Inc. v. Gordon*, 1999 WL 619633, at *3 (S.D.N.Y. Aud. 19, 1999)*; see also Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2003 WL 22218643, at *6, n. 4 (S.D.N.Y. Sept. 25, 2003) (stating that the plaintiff's specific allegations sufficiently pled fraud when balancing Rule 9(b) requirements with notice pleading under Rule 8(a)).

### Response and Argument

For the Court's convenience, the Plaintiffs will track the Defendants' Memorandum as closely as possible:

### I.    Plaintiffs Have Standing

To meet standing, a plaintiff "must show (1) that she suffered an 'injury in fact' that is 'concrete and particular,' and not merely hypothetical; (2) that there is 'a causal connection between the injury and the conduct complained of;' and (3) that it is 'likely that the injury will be redressed by a favorable decision.'" *U.S. v. Vasquez*, 145 F.3d 74, 80-81 (2d Cir. 1998). A plaintiff's standing is an issue dealing specifically with the propriety of bringing a case or controversy to a federal court of law. *See Bordell v. General Elec. Co.*, 922 F.2d 1057, 1060 (2d Cir. 1990) (standing does not focus on the issues a plaintiff wishes to have adjudicated, but rather whether the federal forum is

appropriate, and must be resolved "irrespective of the merits of [the] substantive claims"). When standing is challenged, courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldini*, 422 U.S. 490, 501 (1975).

The Amended Complaint and the Declarations in Attachment D more than meet the test for standing. Defendants fraudulently solicited the Plaintiffs to invest in Met13, and their investments subsequently funded the Defendants' enterprise. Defendants cite *Continental Casualty Co. v. PricewaterhouseCoopers LLP*, mistakenly asserting that the Plaintiffs—because they were at one point limited partners in Met13, even though their causes of action deal with an injury occurring before their investment—have no direct cause of action for fraud. 15 N.Y.3d 264 (N.Y. Ct. App. 2010). However, both parties in *Continental Casualty* conceded "that an individual investor may have a direct claim for an investment made in reliance on a fraud," and the court noted only that the plaintiffs had failed "to come forward with direct, distinct date-of-investment injuries . . . [because] [t]he only injury they seek to establish is the diminution in value of their limited partnership interests at liquidation." *Id.* at 272.

### a. Plaintiffs Have a Direct Claim

Defendants claim lack of standing by maintaining the Plaintiffs' claims are derivative and instead belong to Met13. Defendants acknowledge that MET13 possessed no assets at the time Plaintiffs' made their initial contributions and contend curiously that Plaintiffs' only injuries are losses from their *pro rata* interests in MET13. Defendants' Memorandum, pg. 5 (hereinafter "Def. Memo.").

New York federal courts have "allowed . . . limited partners to bring direct claims alleging injury distinct to themselves, but require that claims alleging injury to the limited partnership be brought derivatively." *CILP Associates v. PricewaterhouseCoopers LLP*, 735 F.3d 114, 122 (S.D.N.Y. 2013). In the Southern District, "courts . . . have held that '[w]here ... plaintiffs acquired limited partnership interests based upon defendants' alleged fraudulent statements and offering material, the injury to plaintiffs is the purchase of the partnership interests.'" *In re Merrill Lynch Ltd. P'ship Litig.*, 7 F.Supp.2d 256, 262 (S.D.N.Y. 1997) (aff'd by *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56 (2d Cir. 1998)); *see also Butala v. Agashiwala*, 916 F.Supp. 314, 317 (S.D.N.Y. 1996) ("The plaintiffs allege that these investments were fraudulent from their inception. Consequently, the plaintiffs were injured when they purchased them."). Other circuits have decided similarly, holding that where "a defendant fraudulently misleads individuals into purchasing equity interests in real property, an injury occurs at the time of investment." *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 249 (3d Cir. 2001). Moreover, both the business entity and an individual can share injuries without preventing the other from bringing a cause of action. *Solutia Inc v. FMC Corp*, 385 F.Supp.2d 324, 331 (S.D.N.Y. 2005).

Plaintiffs' lawsuit is based entirely upon the Defendants' unlawful conduct that induced them to provide Met13 with the funds it needed to establish other entities to subsequently purchase and develop what the Defendants and only the Defendants knew to be virtually worthless oil fields. Plaintiffs invested prior to the limited partnership conducting any business and sustained injury at the time of their investment. Plaintiffs' injuries occurred prior to their status as limited partners.

Additionally, Met13 is a Delaware limited partnership governed by the Delaware Revised Uniform Limited Partnership Act ("RULPA"). Under section 15-405(c) of the RULPA, a plaintiff asserting a derivative action *must* be a partner not only at the time of bringing the action, but must also be a partner "[a]t the time of the transaction of which the partner complains." RULPA § 15-405(c). The Plaintiffs and Class Members were not limited partners at the time they suffered their injuries, and so they cannot by statute allege a derivative suit even if they had wanted to do so.

### b. Plaintiffs' Claims Were Not Released by Met13 in the so-called "Global Settlement Agreement"

Defendants allege that Plaintiffs' claims were released by MET13 in a "Global Settlement Agreement" ("GSA"). Defendants alternatively allege that Plaintiffs fail to articulate direct damages because Met13 contained no assets at the time of their investment. The Defendants' argue that Justice O. Peter Sherwood, in the New York State Action (Attachment F), and Judge Lipman in her Order (Attachment G) transferring the case to this Court had each ruled that the Global Settlement Agreement was enforceable as to the Plaintiffs and Class Members and that their lawsuit is therefor without merit.

### i. Justice Sherwood's Order

Justice Sherwood was faced with competing motions to dismiss and noted that "[t]he GSA was executed by Lisiak four times: (1) in his capacity as chairman for Reed Energy, (2) as an authorized person for North East Fuel, Inc., (3) as an authorized person for NFI Acquisition Co., and (4) in his individual capacity. Sherwood Order, Attachment F at pg. 1. Justice Sherwood never discussed the missing signatures of Met13 or Metropolitan Equity Partners. He did note that Lisiak signed in his individual capacity

and imposed liability on him individually. As a result, any *res judicata* bar of his Order would be solely concerned with Lisiak's liability for defaming SGM in violation of the agreement.

Concerning the GSA release provisions themselves, they govern only that: (1) SGM and Richard Featherly would release MET13, MEP, Reed, NE Fuel, and NFIAC; (2) MET13, MEP, and Paul Lisiak (and their successors) would release SGM (the "SGM Released Parties"); (3) and Reed, NE Fuel, and NFIAC would release the SGM Released Parties. GSA, pg. X. However, as noted, the GSA was only partially signed, and no representative from either MET13 or SGM signed in a representative capacity within the appropriate signature block. The only signatures are Richard Featherly's on behalf of SGM and Paul Lisiak on behalf of Reed Energy, NE Fuel, and NFI. Under New York law, a fact-intensive test will determine whether a party intended to be bound only by a signed agreement:

> "(a) whether the parties expressly reserved the right to be bound only by a signed writing; (b) whether either party has partially performed under the agreement; (c) whether the parties agreed on all the terms of the alleged contract, and (d) whether the type of contract involved is usually put in writing."
> *Farago Advertising, Inc. v. Hollinger Intern, Inc.*, 157 F.Supp.2d 252, 258 (2d Cir. 2001).

Each of these factors represents an arguable point of fact, not law, preventing them from being settled on the basis of the pleadings as required by a motion to dismiss and should instead be determined after both parties have conducted pre-trial discovery.

The history of the Global Settlement Agreement provides an explanation for Lisiak's failure to sign for Met13 or Metropolitan Equity Partners. On page 8 of his Order, Justice Sherwood noted that:

On December 1, 2012, the parties amended the GSA primarily to increase the period of time for SGM to record the "New GM ORRI" from 10 to 20 business days. The Amendment is entitled the "Restructuring Plan Agreement." Reed had previously argued that this renaming meant that the GSA was not a settlement agreement at all, but appears to have abandoned that claim.

Plaintiffs note that Hughes' statement in his Declaration attached to the Def. Memo. that he has proffered a "true and correct executed copy of the Global Settlement Agreement" is incorrect. The Defendants omitted the Amendment (signed one day after the so-called Global Settlement Agreement was signed) that provides an explanation for the missing Met13 signature. When viewed as a management restructuring agreement, the document is obviously a restructuring of Reed and other entities created to exploit the oil properties and thus it does not need the signatures for Met13 or Metropolitan Equity Partners.

Should the Court nonetheless decide that the GSA provisions are binding on Met13, the release provisions contained therein should be strictly construed as only relating to Met13 itself as a business entity. The Plaintiffs in the case at bar are not seeking to remedy injuries done to MET13. On the contrary, Plaintiffs are alleging direct actions for injuries that they themselves suffered, not a derivative action for injuries suffered by Met13. Consequently, Plaintiffs should not be construed as parties subject to the release provisions and should be eligible to bring action against the Defendants for their injuries.

### ii. Judge Lipman's Order

Defendants also assert that "[i]t is law of the case here, as Judge Lipman ruled, that the GSA provisions are 'applicable and enforceable' against plaintiffs." In actuality, Judge Lipman's order was focused strictly on issues of jurisdiction and held that "[w]hile

the Defendants seek several types of relief in the instant motion, because the *Court finds the request to change venue to be well taken, its analysis begins and ends there.* Lipman Order, pg. 7 (emphasis added).

### iii. Lisiak Lacked Power to Waive Plaintiffs' Claims

Under the terms of the CDM, Lisiak never possessed the authority to waive the Plaintiffs' direct actions for fraud. The CDM provides:

> Power of Attorney. The LLC Agreement provides that each Unitholder will constitute and appoint the Board and the liquidators, with full power of substitution, as his true and lawful agent and attorney-in-fact, with full power and authority in his or its name, place and stead, to execute, swear to, acknowledge, deliver, file and record in the appropriate public offices: the LLC Agreement, all certificates and other instruments and all amendments thereof in accordance with the terms hereof … to form, qualify, or continue the qualification of, the Company as a limited liability company …; or own property; all instruments which the Board deems appropriate or necessary to reflect any amendment, change, modification or restatement of the LLC Agreement in accordance with its terms; all conveyances and other instruments or documents which the Board and/or the liquidators deems appropriate or necessary to reflect the dissolution and liquidation of the Company pursuant to the terms of the LLC Agreement, including a certificate of cancellation; a stockholders' or similar agreement, in accordance with the terms of the LLC Agreement, in connection with a distribution or liquidation of the Company; and all instruments relating to the admission, withdrawal or substitution of any Unitholder.
> Attachment E, the CDM.

Defendants have not come forward with any document giving anyone the authority to waive Plaintiffs' claims for fraud in the inducement. Under New York law, a written power-of-attorney agreement is a formal contract. *Lancaster v. Zufle*, 165 F.R.D. 38, 41 (S.D.N.Y. 1996). Such agreements are strictly construed, and "where an attorney-in-fact seeks to enter into a transaction that the governing power of attorney prohibits, the transaction is invalid." *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d 355, 365 (S.D.N.Y. 2008).

### c. Plaintiffs' Claims Are Not Barred by *Res Judicata*

Defendants also allege that Plaintiffs are barred by *res judicata* from Justice O.

Peter Sherwood's previous Order and Decision ("Sherwood Order") dated June 23, 2014.

(Attachment F, *supra*). Justice Sherwood was faced with competing motions to dismiss.

His ruling holding Lisiak *personally* liable for defamation stemmed from Lisiak having

signed the so-called Global Settlement Agreement in his individual capacity. No issue

involved in this litigation as it relates to the Plaintiffs was fully litigated in Justice

Sherwood's court.

To invoke *res judicata*, Defendants must successfully assert that "(1) the previous

action involved an adjudication on the merits; (2) the previous action involved the

plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action

were, or could have been, raised in the prior action." *Monahan v. N.Y. Dept. of

Corrections*, 214 F.3d 275, 285 (2d Cir. 2000). Defendants have not proven any of the

discrete requirements enumerated in *Monahan* and so their claims should fail.

In addition, the Plaintiffs in the case at bar were not adequately represented by

any party in the Sherwood Order. Met13 sought to recover damages for injuries that it

sustained as a business entity and, rather than litigating on behalf of Met13, Lisiak failed

to respond to a Motion to Dismiss and "abandoned" claims relevant to the Plaintiffs'

situation. (See, Attachment F, the Sherwood Order).

Plaintiffs as individuals are seeking to recover damages sustained personally.

Met13 alleged and failed to fully litigate claims that were exclusive to itself. Damages

suffered by the Plaintiffs as class A partners are substantively different from the injuries

suffered by the limited partnership as a whole and to each of the different classes of

limited partners as they were added over time. The interests of the partnership in the previous litigation were not sufficiently aligned with the interests of the Plaintiffs nor were issues that could be deemed relevant to this action fully litigated.

## II. Plaintiffs' RICO Action is Proper

The Defendants' argue that this action is a thinly veiled Securities Fraud action that can never form the basis for a RICO action. As previously mentioned, the claim at bar involves a direct action for fraud in the inducement. As far as the Plaintiffs know the fraudulent behavior was limited to the Defendants' conduct. To the Plaintiffs' knowledge, the entity offering the limited partnership (Metropolitan Equity Partnership) interest was a victim, not a perpetrator or co-conspirator in the frauds.

Defendants maintain that "the RICO claim also must be dismissed because plaintiffs also fail to allege that they were damaged by a predicate act." Paragraphs 35-37 of the Second Amended Complaint allege routine fraudulent telephone calls and e-mails with the Plaintiffs and Class Members. In addition, the Plaintiffs' and Class Members' Declarations filed in the Western District of Tennessee and as Attachment D to this Memorandum, provide further unrefuted proof that the Defendants, through Field, made numerous fraudulent telephone calls *before* the Plaintiffs and certain Class Members wrote checks to fund Met13. Those same affidavits make it clear that these victims relied upon the "blue sky" nature of the Confidential Disclosure Memorandum ("CDM"). The CDM provided a false, optimistic, and "rose-tinted" view of the property as a direct result of the Defendants' fraudulent withholding of the negative Bayswater information.[3]

---

[3] Should the Court take the view that the Plaintiffs' RICO action will only become ripe after the Defendants have been criminally convicted, the Plaintiffs respectfully request that the Court make any dismissal without prejudice to their rights so that the Plaintiffs will have an opportunity to bring a future civil RICO action at a later date should the Defendants be convicted criminally.

### III. Plaintiffs' State a Fraud Claim with Properly-Pled Particularity

Defendants assert that "[p]laintiffs simply fail to plead fraud with particularly, failing to set forth fraudulent conduct for each of the defendants, failing to state where and when statements were made, or to whom the statements were made." Plaintiffs have alleged that the Defendants acted in concert with one another in committing the frauds alleged in the Second Amended Complaint. The Plaintiffs believe that more specific information about individual fraudulent acts by the Defendants will likely come to light once Plaintiffs have had an opportunity to depose Lisiak in pre-trial discovery. As the Declaration of A. James Andrews makes clear, the Defendants continue to bar any access to Lisiak, Met13's records, or any records or personnel at Metropolitan Equity Partners by threatening to sue anyone speaking with the Plaintiffs or their attorneys about this matter. (Attachment H).

The heightened pleading standard of Rule 9(b) "has three purposes: (1) to put the defendant on notice of the details of the claims against him, (2) to protect a defendant's reputation and goodwill from unfounded allegations, and (3) to prevent strike suits." *Federal Housing Finance Agency v. JP Morgan Chase & Co.*, 902 F.Supp.2d 476, 490 (S.D.N.Y. 2012).

Plaintiffs have alleged a scheme/enterprise by the Defendants that was designed to defraud the Plaintiffs through active misrepresentations and material concealments designed to solicit funds to exercise options on very old producing wells and mineral rights. The record contains the Declarations of Van Menard, Dale Menard, Jacob Rejwan, George Crawford, and Karen Batchelder that establish direct material wire fraud deceptions by the Defendant, Lawrence Field, to these Plaintiffs/Class Members. Those

declarations and the Declaration of Eugene Mathis make it clear that the Plaintiffs and Class Members also relied on the CDM, which Defendants made deceptive by selective withholding of material negative information.

The record documents that the material deceptions took place and were relied upon by the Plaintiffs and Class Members prior to the funding of Met13. Plaintiffs have more than met the test of particularity laid down by Rule 9(b) and of general notice pleading as required by Rule 8. Furthermore, additional specific information about dates and substance of telephone calls to other initial investors is likely contained in the records of MEP. That information will only be available to the Plaintiffs once discovery has begun in this lawsuit.

### a. Plaintiffs' Response to Defendants' Claims Concerning Ambiguity of Defendants

The Declaration of Plaintiffs' attorney A. James Andrews (Attachment H) makes it clear that the Defendants have obstructed and continue to obstruct access to Lisiak, a pivotal figure in this case. The Second Amended Complaint lays out a litany of actions by the Defendants and corporate entities controlled in whole or in part by Field and Featherly. Since they perpetrated their frauds, at least one entity, Regent, has been dissolved. Another, Syndicated Geo Management, Inc. may currently be an empty shell, if it exists at all.

The Second Amended Complaint provides adequate notice to the named Defendants of the conduct being challenged. The conspiracy and RICO allegations are sufficient to put the Defendants on notice that the fraudulent acts of one may be attributed to the others. As an example of the need for discovery, Plaintiffs know that Field sent the deceptive e-mail based on the Bayswater Report to Lisiak. The information concerning

which Defendant(s) actually redacted the negative information from the report is presumably known only to the Defendants.

Defendants assert that "[the] Plaintiffs do not allege a single representation made directly by any defendant to any particular plaintiff, or to plaintiffs generally." The Declarations attached to the Second Amended Complaint and attached in support of this Response refute this allegation. The Plaintiffs do agree with one statement by the Defendants: The Plaintiffs were not in privity with the Defendants. This very fact may remove this action from the realm of securities fraud.

### b. Plaintiffs Allege Motive That Would Allow an Inference of Intent

In addition to receiving hundreds of thousands of dollars in direct payments from Plaintiffs' funds, the Defendants received a half interest in Reed. Rather than this venture being the "sure thing" by re-working the old wells that Defendants were promoting, it was also in essence a wildcat venture hoping that valuable undiscovered oil and gas shale deposits lay beneath the worn out and leaking oil wells described in the actual Bayswater Report. Without any evidence that there were commercially exploitable shale deposits on the Properties, the Defendants were betting with the Plaintiffs' money and, had the shale deposits been there, everyone would have profited. Defendants gambled with Plaintiffs' money and with chance, but by making misrepresentations to the Plaintiffs they sought to hedge their bets and ensure that the Plaintiffs would fund at their "shell" game.

### IV. Plaintiffs' Claim of Civil Conspiracy Is Properly Pled

Defendants' assertion that the Plaintiffs' Conspiracy cause of action contains no substantive content is ill founded. Under New York law there is no independent tort for conspiracy. *See Kirch v. Liberty Media Corp.*, 499 F.3d 388, 402 (2d Cir. 2006); *see also*

*Alexander & Alexander of N.Y. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. App. Div. 1986) (stating that "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."). Instead, plaintiffs must sufficiently plead underlying causes of action for torts they allege to be underlying the alleged conspiracy. *Id.* Thus, if there is an actionable underlying tort, a plaintiff may plead the existence of a conspiracy to demonstrate defendant's conduct was part of a common scheme. *Sepenuk v. Marshall*, 2000 WL 1808977, at *6 (S.D.N.Y. 2000).

To establish a civil conspiracy claim, a plaintiff must satisfy four elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World Wrestling Federation Entertainment v. Bozeel*, 142 F.Supp.2d 514, 532 (S.D.N.Y 2001). Put simply, a conspiracy charge is brought to bind defendants who committed underlying torts and "is alleged for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981). A claim for civil conspiracy is measured against the liberal pleading requirements of Rule 8(a) and not the more rigorous requirement of Rule 9(b). *Medtech Products, Inc. v. Ranir, LLC*, 596 F.Supp.2d 778 (S.D.N.Y. 2008).

### c. The Underlying Torts

The torts underlying the Plaintiffs' conspiracy cause of action are incidentally also predicate acts constituting a civil RICO action under 18 U.S.C. § 1961(1), which encompasses wire fraud, 18 U.S.C. § 1343, as a predicate act. "The elements of a wire

fraud claim are: (1) the existence of a scheme to defraud, (2) with specific intent to defraud, and (3) the use of interstate wires in furtherance of the scheme." *A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F.Supp.2d 485, 499 (S.D.N.Y. 1998).

The Second Amended Complaint and supporting Declarations in Attachment D clearly allege multiple acts of wire fraud: the fraudulent phone calls with several of the Representative Plaintiffs (Attachment D) and the misleading e-mail sent to Lisiak (Attachment C) that falsely conveyed that the Bayswater Report contained no negative information.

### i. The Scheme

The Amended Complaint defines the Defendants' scheme to defraud. "A scheme to defraud requires 'fraudulent or deceptive means, such as material misrepresentation or concealment.'" *Id.* (citing *Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F.Supp. 213, 227 (S.D.N.Y. 1992).

Field's fraudulent and misleading telephone calls, made after the Defendants' removed all of the negative information from the Bayswater Report, the e-mail from Field to Metropolitan containing only positive Bayswater assessments, and the Defendants' undisclosed financial relationship that would have disqualified Field and Premier as Metropolitan's diligence experts establish fraud and *scienter*.

### IV. Plaintiffs Justifiably Relied on Defendants' Statements.

Defendants claim that the Plaintiffs could not have justifiably relied on the Defendants' misrepresentations because the Plaintiffs as investors represented and agreed that they were sophisticated investors. The representations were made to Metropolitan Equity Partners in a document generated by Metropolitan Equity Partners and were

created to shield Metropolitan Equity Partners from liability. New York law has held that "[w]here sophisticated investors engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance*." Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997). That standard, however, has been limited, and "even sophisticated investors may justifiably rely on facts that are 'peculiarly within the other party's knowledge.'" *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 495 (S.D.N.Y. 2001) (citing *Lazard Freres*, 108 F.3d at 1542). Nonetheless, being a sophisticated investor does not foreclose an inquiry of justifiable reliance. *Id.* at 497. Whether a sophisticated investor reasonably relied on another in a case alleging fraud must take into account "the degree to which the truth was accessible to the defrauded person." *S.A. v. Christophides,* 106 F.3d 22, 27 (2d Cir. 1997).

As stated previously, Plaintiffs have no found no evidence that would show that MEP knew of the Defendants' frauds. The Defendants maintain that the Plaintiffs acknowledged that they had an opportunity to conduct research without providing any facts that would show that independent research would have uncovered their frauds. Defendants have cited to no case law holding that so-called sophisticated investors cannot be victims of fraud. Such a holding would amount to open season on sophisticated investors.

## V.     RICO Claim

In New York, as per 18 U.S.C. § 1962, a civil RICO action must allege two predicate acts. *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (stating that the district court rightly dismissed plaintiff's civil RICO action for lack of

establishing two predicate acts) *See also Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542 (2d Cir. 1985) (stating that the plaintiff must sustain an injury, not just the corporation). Furthermore, in New York, the "directly injured party should receive a complete recovery, no matter what; an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief." *Carter v. Berger*, 777 F.2d 1173, 1176 (2d Cir. 1985).

In the case at bar, the Plaintiffs and Class Members themselves sustained injuries distinguishable from the Met13 limited partnership, which evolved with additional classes of limited partners other than those who were initially induced into funding Met13.

In civil RICO actions within New York, plaintiffs must satisfy three elements: "(1) a RICO violation, (2) injury, and (3) transaction and loss causation." *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008). The Supreme Court held that plaintiffs attempting to assert an injury "by reason of" a RICO violation must demonstrate but-for causation and proximate causation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653-53 (2008). The Declarations in Attachment D make it clear that Plaintiffs relied on the Defendants' misrepresentations.

The RICO statute generally, is to be "liberally construed to effectuate [the statute's] remedial purposes." *Sedima, S.P.R.L. v. Imrix Co., Inc.*, 473 U.S. 479, 498 (quoting Pub.L. 91–452, § 904(a), 84 Stat. 947). The list of 57 potential Class Members attached to the Second Amended Complaint and their total investment of $24,430,000, constituting injuries occurring before the Met13 limited partnership conducted any business, more than documents an injury attributable to the Defendants' RICO enterprise.

Regarding enterprise, the Supreme Court has stated that the term, like the RICO statute itself, should be interpreted broadly. *See Boyle v. United States*, 556 U.S. 938, 944 (2000) ("[T]he very concept of an association in fact is expansive.").

The RICO statute makes it unlawful for "any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A RICO "person" can be either an individual or a corporation. 18 U.S.C. § 1961(3). A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise itself is not liable for RICO violations; rather, the "persons" who conducted the affairs of the enterprise through a pattern of racketeering activity are liable. *United States v. Philip Morris USA*, Inc., 566 F.3d 1095, 1111 (D.C. Cir. 2009). To establish liability under § 1962(c), a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161 (2001).

The Plaintiffs have alleged an enterprise that consisted and currently consists of five distinct entities: SGM Holdings, LLC; Syndicated Geo Management Corporation; Featherly; Field; and Premier Natural Resources, LLC. The Plaintiffs have also alleged a concerted action by those five to accomplish their fraudulent scheme.

## V. Jury Trial

The Plaintiffs never agreed to waive their right to a jury trial and a jury verdict on the Defendants' fraudulent pre-Met13 behavior. The Defendants' attempt to deny the

Plaintiffs their right to a jury rests on their effort to use documents created after the Defendants' fraud occurred as a way to immunize them from their fraudulent behavior, which occurred before those documents were created.

Plaintiffs never released or gave any third party authority to release the Defendants from the consequences of their fraudulent behavior conducted to induce the Plaintiffs to fund the Defendants fraudulent enterprise.

## VI.    Conclusion

The Plaintiffs have more than met their burden at this initial stage of the litigation to put the Defendants on notice of the specific frauds attributed to them and whatever entities they employed to accomplish their unlawful goals.  More specific information is undoubtedly in the records of Metropolitan Equity Partners and will only become available subject to a subpoena if this Court allows discovery to go forward.

This this 30th day of April 2015.


BY:

/s/ A. James Andrews
A. James Andrews BOPR# 15772
Attorney for Plaintiffs
1405 Magnolia Ave.
Knoxville, TN 37917
(865) 660-3993
(865) 523-0995 – Facsimile
andrewsesq@icx.net


/s/ Richard L. Gaines
Richard L. Gaines, BPR # 15462
Attorney for Plaintiffs
550 Main Street, Suite 950
Knoxville, TN 37902
(865) 546-4292
(865) 546-4294 – Facsimile
richardlgaines@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon counsel for the Defendants through the Court's electronic filing system and directly via email.

/s/ A. James Andrews