UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DNV INVESTMENT PARTNERSHIP, DALE MENARD,
S. EUGENE MATHIS JR., KENNETH A. GRINSPUN,
ADDISON HOLDINGS LLC, and CONTEXT DIRECT II
LP, ON BEHALF OF THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED,

        Plaintiffs.

v.

SGM HOLDINGS LLC, SYNDICATED GEO
MANAGEMENT CORPORATION, RICHARD
FEATHERLY, LAWRENCE FIELD, and PREMIER
NATURAL RESOURCES LLC

        Defendants.

15 Civ. 1255 (PAC) (HBP)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; AND
DEFENDANTS' MOTION TO STRIKE JURY DEMAND**

THE SCHULMAN LAW FIRM LLP
Dan J. Schulman
Deric Gerlach
11 Broadway, Suite 615
New York, New York 10004
(646) 225-6600
*Counsel for Defendants*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... ii

SUMMARY ..................................................................................................................................1

ARGUMENT .................................................................................................................................2

1.      Standing ..............................................................................................................................2

2.      The Global Settlement Agreement Was
Fully Executed and Is Binding on Plaintiffs .....................................................................4

          (a)      The GSA Was Fully Executed ...............................................................................4

          (b)      MET13 Had Full Authority to Release Its Claims .................................................5

          (c)      Judge Lipman's Order Controls .............................................................................5

3.      The RICO and Conspiracy Claims Must Be Dismissed .....................................................6

4.      Plaintiffs Fail to Plead Fraud ..............................................................................................7

5.      Plaintiffs Twice Waived the Right to Trial by Jury ............................................................9

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

## Federal Cases

Brown v. E.F. Hutton Group Inc., 991 F.2d 1010 (2d Cir. 1993)....8

Chill v. Gen. Elec. Co., 101 F.3d 263 (2d Cir. 1996)....9

Druck Corp. v. Maco Fund Ltd., 290 Fed. Appx. 441 (2d Cir. 2008)....2

In re QLT Inc. Sec. Litig., 312 F. Supp. 2d 526 (S.D.N.Y. 2004)....7

Lighthouse Financial Group v. Royal Bank of Scotland Group PLC, 902 F. Supp. 2d 329 (S.D.N.Y. 2012)....7-8

MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268 (2d Cir. 2011)....6

Medis Investor Group v. Medis Technologies, Ltd., 586 F. Supp. 2d 136 (S.D.N.Y. 2008)....8-9

Roby v. Corp. of Lloyd's, 996 F.2d 1353 (2d Cir. 1993)....6

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004)....7

Soley v. Wasserman, Fed. Sec. L. Rep. P 95643, 2010 WL 931888 (S.D.N.Y. Mar. 12, 2010)....3

Tellabs Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308 127 S. Ct. 2499 (2007)....9

## State Cases

Continental Casualty Co. v. PricewaterhouseCoopers LLC, 15 N.Y.3d 264 (2010)....2, 3

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996)....3

## Statutes and Rules

N.Y. Jud. Law § 487....2

**SUMMARY**

Plaintiffs lack direct injury required for standing because their injuries are no different than their proportionate share of injuries claimed (and released) by MET13. Plaintiffs attempt to manufacture standing, and to avoid the releases in the Global Settlement Agreement ("GSA") by conceding that they are not alleging fraud for anything that occurred <u>after</u> they had invested in MET13. Plaintiffs then advance the new claim that they suffered injury <u>before</u> they invested. The claim is meritless: plaintiffs could not have any injuries until they invested, and the complaint is devoid of allegations of pre-investment injury. Nor can plaintiffs state a claim for date-of-investment injuries because -- as they concede -- MET13 had no assets or operations when they invested; by definition, plaintiffs did not purchase over-valued assets. Plaintiffs also seek to avoid the releases in the GSA by claiming that the GSA was not fully executed. The claim is factually false, and also is contradicted by plaintiffs' allegations in the complaint.

As to RICO, plaintiffs do not and cannot contest that they purchased securities, nor do they contest that fraud in connection with the purchase or sale of securities does not qualify as a RICO predicate act. Instead, plaintiffs ignore controlling precedent cited in defendants' motion and seek to make an end-run around the PSLRA by arguing that supposed wire frauds in connection with the sale of securities qualify as RICO predicate acts. They do not.

Plaintiffs admit that there is no standalone tort of conspiracy in New York. And plaintiffs do not seek to contest that the MET13 LP Agreement and their subscription agreements contain jury waivers. Instead, they seek to avoid the jury trial waivers and releases by claiming, falsely, that Judge Lipman never ruled that both agreements are binding on plaintiffs.

Finally, plaintiffs compound the vagueness in the fraud allegations by making entirely new vague and non-specific allegations about what unspecified "Defendants" misrepresented to

the portmanteau entity, "Metropolitan." Plaintiffs argue that the lack of particularity in the complaint is cured by six declarations that they annex. However, there is not a single specific allegation as to four of the five defendants in those declarations or the complaint, and the allegations in those declarations do not suffice to allege fraud as to the remaining defendant.

Finally, plaintiffs seek to avoid dismissal with prejudice by insinuating that defendants face conviction on criminal charges. (See Opp'n Mem. at 15 n.3.) The claim is entirely baseless: plaintiffs have not been investigated let alone charged criminally. The claim is outrageous and offensive, and it further highlights plaintiffs' and their counsel's technique of making unsupported claims and allegations that they know to be false, all in the apparent belief that they are shielded by the absolute litigation privilege. But see N.Y. Jud. Law § 487.

## ARGUMENT

**1.   Standing**

To have standing to sue, plaintiffs -- investors and limited partners in MET13 -- must set forth an injury independent of the injury sustained by MET13; plaintiffs have no standing if they cannot prevail without showing injury to the fund. See Continental Casualty Co. v. PricewaterhouseCoopers LLC, 15 N.Y.3d 264 (2010); Druck Corp. v. Macro Fund Ltd, 290 Fed. Appx. 441 (2d Cir. 2008).

Plaintiffs' opposition papers radically prune their claims, conceding that, **"[f]or purposes of this lawsuit, Defendants' fraud ceased when the Plaintiffs and Class Members wrote their checks to fund the limited partnership**." (Opp'n Mem. at 3 (emphasis added).) Plaintiffs also concede that "**they are not asserting any claims as to any investments or other business conducted by Metropolitan EIH13 LP ('MET13') after they invested."** (Id. at 9 (emphasis added).)

Plaintiffs then argue that "Plaintiffs' injuries occurred **prior** to their status as limited partners" (Opp'n Mem. at 9 (emphasis added)) and that "[t]he Plaintiffs and Class Members were **not** limited partners at the time they suffered their injuries . . . ." (id. at 10 (emphasis added)). This "prior-to-the-date-of investment" argument is meritless on its face: actual damages are a required element of fraud;[1] and until plaintiffs invested money and became limited partners in MET13, they did not and could not have sustained any injuries. Consistently, in the complaint, plaintiffs assert that that they sustained injuries on account of their investments in MET13, not prior to those investments. (E.g., Compl. ¶ 119.)

Plaintiffs briefly state in their opposition papers that they "sustained injury at the time of their investment." (Opp'n Mem. at 9.) However, this argument for "date-of-investment" injuries is unavailing because plaintiffs could only have such injuries if they had purchased fraudulently over-valued assets. Here, however, plaintiffs nowhere even allege that they purchased over-valued assets; to the contrary, plaintiffs concede that "Plaintiffs invested prior to the limited partnership conducting any business . . . ." (Id.) See Continental Casualty, 15 N.Y.3d at 271-72 (plaintiffs' injuries were all derivative; plaintiffs failed to come forward with evidence demonstrating that the portfolio was overvalued on the day of their investments).

Plaintiffs' difficulty in pleading damages perfectly illustrates the derivative nature of their claim -- if anyone was injured by defendants' alleged fraud, it was MET13, which lent money to Reed (after plaintiffs had invested in MET13) to invest in allegedly overvalued assets -- but MET13, Reed, and their affiliates released any claims they may have had in the GSA.

---

[1] See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 422 (1996) (affirming dismissal of action alleging fraud because plaintiff did not sustain "out-of-pocket" damages); see also Soley v. Wasserman, Fed. Sec. L. Rep. P 95643, 2010 WL 931888, at *6 (S.D.N.Y. Mar. 12, 2010) (dismissing count for common law fraud for failure to allege damages).

3

Plaintiffs, by contrast, invested money in a fund that had no assets and no operations at the time of the investment and therefore could not have suffered a loss independent of the loss allegedly suffered by MET13.

## 2. The Global Settlement Agreement Was Fully Executed and Is Binding on Plaintiffs

Plaintiffs make several arguments seeking to avoid the general releases contained in the GSA, a document incorporated by reference in the complaint (Compl. ¶¶ 110-11), and to collaterally attack the decisions and orders of Justice Sherwood and Judge Lipman enforcing the GSA. The arguments are meritless as a matter of fact; and contradicted by plaintiffs' own allegations both in the complaint and elsewhere in their opposition papers.

### (a) The GSA Was Fully Executed

Plaintiffs make a brand-new argument that the GSA was not fully executed. The argument is meritless; the GSA was signed by all parties to that agreement. (See April 20, 2015 Declaration of James T. Hughes Jr. ("Hughes Decl." Ex. C (D.E. 66-3) at GSA-000029-31.)[2]

The GSA was dated November 30, 2012, and amended the next day, Saturday, December 1, 2012, in a two-page amendment. (Hughes Decl. Ex. C (D.E. 66-5) at GSA-000165-67.) The GSA amendment lists and is executed by all parties to the GSA, and re-states that "[a]s of November 30, 2012, the Parties entered into that certain Global Settlement Agreement."

Plaintiffs know that the GSA was executed by Metropolitan -- they allege in the complaint that "Metropolitan . . . signed the agreement." (Compl. ¶ 111.) The argument that the GSA was not executed is also inconsistent with plaintiffs' argument that their failure to plead

---

[2] The copy of the GSA originally filed annexed the GSA and its December 1, 2012 amendment as one exhibit; the November 30, 2012 GSA had multiple counterpart signature pages, one of which was not copied as a result of a clerical error, and instead one of the unsigned counterpart signature pages was substituted for it, although all signatures to the December 1, 2012 amendment to the GSA were present. The copying error has been corrected. (D.E. 66-3.)

4

fraud with particularity should be excused because counsel for Metropolitan advised that "Metropolitan had signed a Global Settlement Agreement that prohibits them from encouraging lawsuits against the Defendants . . . ." (July 15, 2014 Declaration of A. James Andrews ¶ 5 (attached as Ex. H. to Opp'n Mem.).)

Plaintiffs are seeking to deceive the Court in arguing that the GSA was not fully executed. If they had any doubt, they could have asked about this in one of the calls they made to defendants' counsel, or Metropolitan's counsel. Instead, they choose to "play ostrich."

### (b)    MET13 Had Full Authority to Release Its Claims

As Justice Sherwood held, the GSA is valid and enforceable. MET13, Metropolitan GP Holdings LLC (MET13's general partner), Metropolitan Equity Partners LLC ("MEP") (MET13's manager), Reed, and their affiliates signed the GSA, and released the precise claims being asserted by plaintiffs as limited partners in MET13. As the MET13 LP Agreement provides, plaintiffs had no management authority in MET13. (Hughes Decl. Ex. C (MET13 LP Agreement) § 5.01 at GSA-000085 ("The powers of the Partnership shall be exercised by or under the authority of . . . the General Partner . . . . No Person other than the General Partner . . . has the authority or power to act for on on behalf of the Partnership . . . .").)

### (c)    Judge Lipman's Order Controls

Plaintiffs seek to collaterally attack Judge Lipman's order by two meritless arguments: that the GSA was not executed, and that Judge Lipman did not address the validity or applicability of the GSA.

Plaintiffs simply ignore Judge Lipman's analysis in her February 13, 2015 order granting defendants' motion to change venue ("Lipman Order," D.E. 46) at 7-13.) In that analysis, Judge Lipman found that, when plaintiffs invested, they had entered into a comprehensive and binding

5

arrangement documented by the MET13 LP Agreement and their subscriptions agreements. (Id. at 7-11.) Judge Lipman concluded that plaintiffs were bound by the provisions of the GSA, including its venue provisions. (Id. at 13.) Judge Lipman's conclusion here resulted, in part, from her review and analysis of Roby v. Corp. of Lloyd's, 996 F.2d 1353 (2d Cir. 1993) (plaintiffs sued for fraudulent inducement for pre-contract representations inducing them to invest as Lloyd's Names; Second Circuit held that Names were bound by agreements they subsequently signed). (See Lipman Order at 9-10.) Judge Lipman concluded that SGM and plaintiffs, as MET13 partners, are bound by the venue provisions of the MET13 Partnership Agreement that they and SGM had executed, and that the GSA extends the benefit of those venue provisions to all defendants in addition to SGM. In short, the GSA is binding on plaintiffs. (See Lipman Order at 11, 13; see generally Mem. in Supp. of Mot. to Dismiss ("Def. Mem.") at 7, 24.)

### 3. The RICO and Conspiracy Claims Must Be Dismissed

Plaintiffs do not cite a single case or seriously contest that the RICO claim must be dismissed for failure to plead a predicate act of racketeering. (See Opp'n Mem. at 15.) Their argument that they alleged wire fraud or mail fraud, thus supplying a RICO predicate act, was anticipated in the moving papers, which cited controlling authority that precludes a plaintiff from re-characterizing a securities fraud claim as one for mail or wire fraud in order to circumvent the PSLRA -- authority that plaintiffs neither cite nor seek to distinguish. See MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 278-80 (2d Cir. 2011) ("PSLRA's RICO Amendment, 18 U.S.C. § 1964(c), bars a plaintiff from asserting a civil RICO action premised upon predicate acts of securities fraud, including mail or wire fraud . . . .").

Plaintiffs also effectively concede that the conspiracy claim, as articulated in the complaint, is meritless, acknowledging that "[u]nder New York law there is no independent tort

6

for conspiracy . . . ." (Opp'n Mem. at 18.) Plaintiffs' effort to re-characterize the claim as a conspiracy to commit a tort fails because plaintiffs fail to state a claim for an underlying tort, either RICO or fraud.

**4.    Plaintiffs Fail to Plead Fraud**

Plaintiffs make two arguments why their claim for fraud should not be dismissed for failure to plead fraud with particularity: (1) they argue that the declarations of Van Menard, Dale Menard, Jacob Rejwan, George Crawford, and Karen Batchelder cure the deficiencies in the complaint (Opp'n Mem. at 16-17) and (2) they argue that their failure to plead with particularity owes to their inability to gather information from MEP and Paul Lisiak (MEP's manager) (id.).

Regarding the first point, neither the complaint nor the declarations set forth any specific allegations concerning four of the defendants -- SGM Holdings LLC, Syndicated Geo Management Corporation, Richard Featherly, or Premier Natural Resources LLC -- and the Court should dismiss the complaint against those defendants forthwith. The complaint and the declarations also fail to state a claim for fraud against Lawrence Field (the only defendant who is alleged to have made statements to plaintiffs) because Mr. Field is not alleged to have had any special relationship with plaintiffs, and plaintiffs concede that they were not in privity with any defendant. (Opp'n Mem. at 18.) Moreover, expressing optimism about prospective investments, or the results of due diligence constitutes non-actionable "puffing" and may not form the basis for a claim of fraud. Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004); In re QLT Inc. Sec. Litig., 312 F. Supp. 2d 526, 532-33 (S.D.N.Y. 2004) (same); Lighthouse Financial Group v.

Royal Bank of Scotland Group PLC, 902 F. Supp. 2d 329, 341 (S.D.N.Y. 2012) (optimistic comments about due diligence were mere puffery).[3]

Plaintiffs' argument that they need to speak with MEP in order to plead fraud with particularity is inconsistent with their claimed "knowledge" that MEP was an innocent dupe. ("To the Plaintiffs' knowledge, the entity offering the limited partnership (Metropolitan Equity Partnership) interest was a victim, not a perpetrator or co-conspirator in the frauds." (Opp'n Mem. at 15.)[4] In other words, plaintiffs claim to have sufficient knowledge to clear MEP (and Mr. Lisiak) of any wrongdoing -- while at the same time they claim to lack sufficient knowledge to plead fraud with particularity. Plaintiffs' argument that they cannot plead fraud with particularity highlights the fact that they are seeking to assert claims that belong to MET13.

Plaintiffs also fail to plead scienter. Plaintiffs do not address, let alone seek to rebut, the point made in the moving papers (Def. Mem. at 15-17), that Mr. Field's decision, as alleged in the complaint, to trade part of Regent's investment banking fee for a minority (6%) interest in Reed (Compl. ¶ 68) junior to MET13's secured loan to Reed provides a strong inference that there was no intent to defraud, and that Mr. Field believed that the oil and gas investments could be highly profitable.[5] E.g., Medis Investor Group v. Medis Technologies, Ltd., 586 F. Supp. 2d

---

[3] Brown v. E.F. Hutton Group Inc., 991 F.2d 1010, 1029-30 (2d Cir. 1993) (investors who had purchased interests in "prototypically risky" oil and gas partnerships sued E.F. Hutton for supposed oral misrepresentations by account executives that these were low-risk investments; the Second Circuit held "[a]s a matter of law" that the limited partners could not have justifiably relied on any oral representations, because the prospectus disclosed the material risk factors).

[4] See also Compl. ¶ 130 ("Plaintiffs specifically acknowledge that Metropolitan did not commit any fraudulent actions in the solicitation of funds for and the establishment of Met 13"; Opp'n Mem. at 3 (Mr. Lisiak (MEP's manager) is "an innocent party").

[5] Defendant SGM also held a 40% interest in Reed until the Global Settlement Agreement, at which time it traded that interest for a Class A limited partnership interest in MET13. (Compl. Ex. D at 5; Hughes Decl. Ex. C § 4(b) at GSA-00008.)

136, 147-48 (S.D.N.Y. 2008) (dismissing securities fraud complaint for failing to plead a strong inference of scienter, and given the implausibility of the purported scheme), aff'd, 328 Fed. Appx. 754 (2d Cir. 2009); see generally Tellabs Inc. v. Makor v. Issues & Rights Ltd., 551 U.S. 308 (2007) (plaintiff alleging fraud must plead facts rendering inference of scienter at least as likely as any plausible opposing inference ; see also Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996) ("generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter").

**5.     Plaintiffs Twice Waived the Right to Trial by Jury**

Finally, in the event that the Court should deny, in whole or part, the motion to dismiss, or afford plaintiffs a fourth opportunity to replead, plaintiffs fail to cite to any authority to support their request for the Court to ignore the jury trial waivers contained both in the GSA and in the MET13 Partnership Agreement. (Compare Opp'n Mem. at 24 with Def. Mem. at 23-24; see also Lipman Order at 7-11.)

## CONCLUSION

For the foregoing reasons, the Court should dismiss the action and each cause of action, and strike plaintiffs' jury trial demand.

Dated: New York, New York
      June 8, 2015

                              **THE SCHULMAN LAW FIRM LLP**

                              By: _____
                                  Dan J. Schulman
                                  Deric Gerlach
                        11 Broadway, Suite 615
                        New York, New York 10004
                        Tel: (646) 225-6600
                        Email: djs@djslf.com

                        *Attorneys for Defendants, SGM Holdings LLC, Syndicated Geo Management Corporation, Richard Featherly, Lawrence Field, and Premier Natural Resources LLC*