UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
DNV INVESTMENT PARTNERSHIP, :
DALE MENARD, S. EUGENE MATHIS JR., :
KENNETH A. GRINSPUN, ADDISON :
HOLDINGS LLC, and CONTEXT DIRECT :
II LP, on behalf of themselves and all others :
similarly situated, :
                                                     :  15 Civ. 1255 (PAC)
            *Plaintiffs*, :

      -*against*- :  **OPINION & ORDER**

SGM HOLDINGS LLC, SYNDICATED :
GEO MANAGEMENT CORPORATION, :
RICHARD FEATHERLY, LAWRENCE :
FIELD, and PREMIER NATURAL RE- :
SOURCES LLC, :
           *Defendants*. :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-17-16

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs are limited partners in MET13, a partnership formed to exploit oil and gas options owned by defendants. Plaintiffs allege defendants conspired to fraudulently induce plaintiffs to invest in MET13. Defendants move to dismiss the action. Since the limited partners' claimed injuries are no different from those suffered by the partnership, they lack standing to sue in their individual capacities. The complaint must be dismissed.

**I.  Background**

The following allegations are taken from plaintiffs' Second Amended Complaint (SAC), which the Court credits as true for the purpose of deciding the motion to dismiss.

In March 2011, defendants Richard Featherly and Lawrence Field, through their respective companies, Syndicated Geo Management (SGM) and Regent Private Capital (Regent), entered

1

into an agreement to exploit oil and gas options held by SGM in an Ohio oil field. SAC ¶¶ 14–16. Field engaged Metropolitan Equity Partners (MEP) to finance the endeavor. *Id.* at ¶¶ 21, 30. And MEP formed a series of entities, including Reed Energy and Reed Energy Exploration (Reed), for the purpose of exploiting the oil and gas resources. *Id.* at ¶¶ 20, 24. Metropolitan EIH13 (MET13) was formed to raise capital from investors, who joined MET13 as limited partners. *Id.* at ¶¶ 21, 30. MET13 used the funds contributed by the limited partners to purchase debt and equity interests in Reed, which used the capital to purchase the oil and gas rights from SGM and to finance its operations. *Id.* at ¶ 24. But things did not go as planned. Reed's attempt to exploit the oil and gas resources was an unmitigated disaster. Many of the wells could not be found; others were so decrepit they could not produce; and the rest produced well below expectations. *Id.* at ¶¶ 90–94. MEP attempted to salvage the venture by raising more capital to purchase additional mineral rights, but Reed, which was controlled by SGM, refused to permit the new investments, unless MEP agreed to a global settlement agreement (GSA) releasing SGM and its affiliates from any liability. *Id.* at ¶ 110. MEP agreed and signed the release. *Id.* at ¶ 111.

At the heart of plaintiffs' claims lie a series of alleged misleading statements and omissions that Field made to MEP and MET13's limited partners to secure their investments. Plaintiffs allege that Field misrepresented the oil field's capacity to produce; falsely claimed that his company had conducted due diligence on the oil field; and altered a report produced by an independent company to remove any negative findings. *Id.* at ¶¶ 39, 43–56, 81. Plaintiffs further allege that Field did not disclose to MEP or MET13's partners that he had a preexisting interest in the options at any time. *Id.* at ¶ 59. Plaintiffs allege Field's misrepresentations and his failure to disclose his financial interests fraudulently induced them to join MET13 as limited partners. *Id.* at ¶¶ 24, 52, 108. Plaintiffs

2

allege they lost their entire investment of over $20 million, and that they may be liable for future costs of up to $3 million for closing open wells. *Id.* at ¶ 109.

On October 17, 2013, MET13 and Reed sued SGM and Featherly in New York State Supreme Court, raising, among other claims, claims of fraudulent misrepresentation and concealment and breach of contract. Hughes Decl. Exh. B at 4. In a decision dated June 23, 2014, Justice O. Peter Sherwood held that the GSA applied to MET13 and Reed and dismissed their claims with prejudice. *Id.* at 4, 11. Plaintiffs originally filed this action in the United States District Court for the Western District of Tennessee, stating three causes of action: (1) fraudulent misrepresentation and concealment and fraud in the inducement; (2) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961, *et seq.*; and (3) conspiracy. *Id.* at ¶¶ 112–35. Plaintiffs assert claims on behalf of all 57 of MET13's Class A limited partners. *Id.* at ¶¶ 136–51. The action was transferred to this Court by order of District Judge Sheryl H. Lipman, dated February 13, 2015. Judge Lipman relied in part on the GSA's forum-selection provision, which she held to be "applicable and enforceable" against plaintiffs. Dkt. 46 at 13. Defendants now move to dismiss.

## II. Legal Standard

In deciding a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the Court to infer

3

only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard and must be dismissed. *Id.* at 678.

### III. Discussion

A limited partner's standing to sue requires an alleged injury that is independent of any injury to the partnership itself; otherwise the action must be brought derivatively. *See Continental Cas. Co. v. PricewaterhouseCoopers LLP*, 15 N.Y.3d 264, 272 (2010). Accordingly, plaintiffs must allege an injury that is that is different from the losses suffered in proportion with their pro rata interests in MET13. *See id.* They have failed to do this.

Plaintiffs baldly assert that they "sustained injury at the time of their investment" in MET13. Opp'n Mem. at 9; *see also id.* at 3 ("For purposes of this lawsuit, Defendants' fraud ceased when the Plaintiffs and Class Members wrote their checks to fund the limited partnership."). But what injury? Plaintiffs exchanged cash for a pro rata interest in MET13, an entity that, at the time of their investments, had no assets and conducted no business. As such, there is no "difference between the value of the bargain [plaintiffs were] induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Continental*, 15 N.Y.3d at 271 (quoting *Sager v. Friedman*, 270 N.Y. 472, 481 (1936)). They got what they paid for. Any losses plaintiffs have since suffered were suffered as limited partners in MET13. MET13 did not engage in the oil and gas venture until after plaintiffs invested, and the partnership suffered no losses until the venture failed. It is those losses—the *partnership's* losses, allocated to plaintiffs according to their pro rata interests *in the partnership*—for which plaintiffs now seek redress. *See id.* at 272 ("The only injury [plaintiffs] seek to establish is the diminution in value of their limited partnership interests . . . . However, that diminution is attributable to their pro rata share of the

4

partnership's losses after the date of their investments, and they experienced those losses in their capacities as limited partners in common with all other limited partners.").[1]

## IV. Conclusion

Since plaintiffs' alleged injuries are no different from those suffered by the partnership, they lack standing to sue in their individual capacities. If they are to seek redress for injuries suffered by the partnership, their claims must be brought derivatively. The motion to dismiss is GRANTED with prejudice. The Clerk of Court is directed to terminate the motion at Docket No. 62 and to terminate the action.

Dated: New York, New York  
March 17, 2016

SO ORDERED

*Paul A. Crotty* (signature)

PAUL A. CROTTY  
United States District Judge

---

[1] Even if plaintiffs could raise these claims, the Court notes that they are likely bound by the GSA's release of claims. MET13's general partner signed the agreement, and that act binds the limited partners. *See* 2d Amend. Compl. ¶ 111 ("Metropolitan . . . signed the agreement."); Hughes Decl. Exh. C § 5.01 (provision of partnership agreement conferring to MET13's general partner sole authority to act on behalf of the partnership). Moreover, it is law of the case that at least the forum-selection provisions of the GSA are "applicable and enforceable" against plaintiffs, as held by Judge Lipman. Dkt. 46 at 13. Plaintiffs fail to distinguish those provisions from the GSA's release of claims.